PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Charles E. Davidow (admitted *pro hac vice*)
2001 K Street, NW
Washington, District of Columbia 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
Email: cdavidow@paulweiss.com

Robyn F. Tarnofsky (admitted *pro hac vice*)
James J. Brennan (admitted *pro hac vice*)
Matthew J. Moses (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: rtarnofsky@paulweiss.com
Email: jbrennan@paulweiss.com
Email: mmoses@paulweiss.com

BINGHAM MCCUTCHEN LLP
David M. Balabanian (SBN: 37368)
Frank Busch (SBN 258288)
Tarek Sorensen (SBN 261528)
3 Embarcadero Center
San Francisco, California 94111
Telephone: (415) 393-2000
Facsimile: (415) 393-2286
Email: david.balabanian@bingham.com
Email: frank.busch@bingham.com
Email: tarek.sorensen@bingham.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, STATIONARY ENGINEERS LOCAL 39 PENSION TRUST FUND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE BANK OF NEW YORK MELLON CORPORATION, THE BANK OF NEW YORK MELLON, THE BANK OF NEW YORK COMPANY, INC., THE BANK OF NEW YORK, and THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,<br><br>Defendants. | No. 3:11-CV-03620-WHA<br><br>**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION TO DISMISS THE CLASS ACTION COMPLAINT**<br><br>Date:   December 15, 2011<br>Time:   8:00 a.m.<br>Judge:  Hon. William H. Alsup |

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

   I.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ............... 2

        A.    Plaintiff Fails to State a Claim With Respect to Rates Supposedly Offered to Other Clients in Comparable Transactions ........................................... 2

        B.    The Bank's Alleged Failure to Provide Best Execution Standards or Standing Instruction FX Transactions Free of Charge Did Not Breach the Parties' Contract ........................................................................................... 4

   II.   PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF AN IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING .................................................. 5

   III.  PLAINTIFF FAILS TO STATE A CLAIM UNDER THE CALIFORNIA UCL ............ 6

        A.    Plaintiff's Reliance on a Case Involving State Street Bank Cannot Salvage Its Claims Under the UCL. ................................................................... 7

        B.    Plaintiff Fails Adequately to Allege That Statements About the Bank's Standing Instruction FX Services Were Fraudulent. ................................ 8

        C.    Plaintiff Fails Adequately to Allege That BNY Mellon's Conduct Caused Unavoidable Injury. ............................................................................. 10

        D.    Plaintiff Fails Adequately to Allege That BNY Mellon's Behavior Was "Unlawful." .............................................................................................. 11

   IV.  PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF THE FAL ............. 11

   V.   PLAINTIFF FAILS TO STATE A CLAIM UNDER THE NEW YORK UNFAIR BUSINESS PRACTICES STATUTE ................................................................ 12

   VI.  PLAINTIFF LACKS STANDING TO BRING CLAIMS BASED ON ALLEGED CONDUCT BEFORE IT USED THE BANK'S STANDING INSTRUCTION SERVICES ................................................................................................ 13

   VII. PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE LIMITATIONS PERIODS ............................................................................................. 14

   VIII. PLAINTIFF FAILS TO STATE CLAIMS AGAINST BANK OF NEW YORK MELLON CORP. AND BANK OF NEW YORK CO., INC. .......................................... 14

CONCLUSION ............................................................................................................................. 15

## TABLE OF AUTHORITIES

Page

**CASES**

*ACS Sys., Inc.* v. *St. Paul Fire & Marine Ins. Co.*,
 147 Cal. App. 4th 137 (2007) ...................................................................................................4

*Akaosugi* v. *Benihana Nat'l Corp.*,
 No. C 11-01272, 2011 WL 5444265 (N.D. Cal. Nov. 9, 2011)...............................................13

*Ammirato* v. *Duraclean Int'l, Inc.*,
 687 F. Supp. 2d 210 (E.D.N.Y. 2010) .....................................................................................12

*Ashcroft* v. *Iqbal*,
 129 S. Ct. 1937 (2009)...............................................................................................................3

*Berryman* v. *Merit Prop. Mgmt., Inc.*,
 152 Cal. App. 4th 1544 (2007) ..................................................................................................9

*Buller* v. *Sutter Health*,
 160 Cal. App. 4th 981 (2008) ....................................................................................................9

*Churchill Village, L.L.C. v. Gen. Elec. Co.*,
 169 F. Supp. 2d 1119 (N.D. Cal. 2000) ...................................................................................12

*Daugherty* v. *Am. Honda Motor Co., Inc.*,
 144 Cal. App. 4th 824 (2006) ....................................................................................................9

*Davis* v. *Ford Motor Credit Co.*,
 179 Cal.App.4th 581 (2009) ....................................................................................................10

*Duncan v. McCaffrey*,
 No. F060922, 2011 WL 5110475 (Cal. App. 5 Dist. Oct. 28, 2011)....................................5, 8

*Feitelberg* v. *Credit Suisse First Boston, LLC*,
 134 Cal. App. 4th 997 (2005) ....................................................................................................7

*Freeman* v. *Time*,
 68 F.3d 285 (9th Cir. 1995).................................................................................................9, 12

*Girard* v. *Toyota Motor Sales, Inc.*,
 316 Fed. Appx. 561, 2008 WL 5077581 (9th Cir. Nov. 24, 2008).........................................12

*Guz* v. *Bechtel National, Inc.*,
 24 Cal. 4th 317 (2000) ..........................................................................................................5, 6

*Harvey G. Ottovich Revocable Living Trust Dated May 12, 2006* v. *Wash. Mut., Inc.*,
 No. C 10-02842, 2010 U.S. Dist. LEXIS 99161 (N.D. Cal. Sept. 22, 2010)...........................7

TABLE OF AUTHORITIES
(continued)

Page

*Haskell* v. *Time, Inc.*,
  857 F. Supp. 1392 (E.D. Cal. 1994) ................................................................................. 9, 12

*Hill* v. *State St. Corp.*,
  No. 09cv12146, 2011 WL 3420439 (D. Mass. Aug. 3, 2011) ................................................. 7

*Lee* v. *Oregon*,
  107 F.3d 1382 (9th Cir. 1997) ............................................................................................. 13

*Leek* v. *Cooper*,
  194 Cal. App. 4th 399 (2011) .............................................................................................. 15

*McCann* v. *Lucky Money, Inc.*,
  129 Cal. App. 4th 1382 (2005) .............................................................................................. 9

*McKinnis* v. *Gen. Mills, Inc.*,
  No. CV 07-2521, 2007 WL 4762172 (C.D. Cal. Sept. 18, 2007) ..................................... 10, 12

*Montrose Chem. Corp.* v. *Admiral Ins. Co.*,
  10 Cal. 4th 645 (1995) ........................................................................................................... 3

*Nesovic* v. *United States*,
  71 F.3d 776 (9th Cir. 1995) ................................................................................................. 14

*N.Y. Univ.* v. *Cont'l Cas. Ins. Co.*,
  87 N.Y.2d 308 (1995) .......................................................................................................... 13

*Oswego Laborers' Local 214 Pension Fund* v. *Marine Midland Bank, N.A.*,
  85 N.Y.2d 20 (1995) ....................................................................................................... 12, 13

*PB Ams., Inc.* v. *Cont'l Cas. Co.*,
  690 F. Supp. 2d 242 (S.D.N.Y. 2004) ................................................................................. 12

*Rabago* v. *Deutsche Bank Nat. Trust Co.*,
  No. 5:10-CV-01917, 2011 WL 2173811 (C.D. Cal. June 1, 2011) .................................. 10, 11

*Richards* v. *CH2M Hill, Inc.*,
  26 Cal. 4th 798 (2001) ......................................................................................................... 14

*Sevey* v. *Soliz*,
  No. C 10-3677, 2011 WL 2633826 (N.D. Cal. July 5, 2011) ................................................. 3

*Sonora Diamond Corp.* v. *Superior Court*,
  83 Cal. App. 4th 523 (2000) ................................................................................................ 15

TABLE OF AUTHORITIES
(continued)

Page

In re *Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*,
   758 F. Supp. 2d 1077 (S.D. Cal. 2010) ................................................................................11

*Storek & Storek, Inc.* v. *Citicorp Real Estate, Inc.*,
   100 Cal. App. 4th 44 (2002) ...................................................................................................6

*Total Call Int'l, Inc.* v. *Peerless Ins. Co.*,
   181 Cal. App. 4th 161 (2010) .................................................................................................3

*Yakas* v. *Chase Manhattan Bank, U.S.A.*,
   No. C 09-02964, 2010 WL 367475 (N.D. Cal. Jan. 25, 2010) ...............................................4

**STATUTES**

Cal. Bus. & Prof. Code § 17500 ..................................................................................................12

Defendants submit this reply memorandum of law in further support of their motion to dismiss the Class Action Complaint (the "Complaint").

## PRELIMINARY STATEMENT

Plaintiff's Memorandum confirms that its claims are based on invented obligations that are inconsistent with the plain language of the fully integrated contract between it and BNY Mellon concerning standing instruction FX services. That agreement requires BNY Mellon to offer a guaranteed FX rate each morning and, if Plaintiff elects to proceed with an FX trade with BNY Mellon, to execute the trade at a price that is no worse than the guaranteed rate and within 300 basis points of the interbank rate. Plaintiff does not allege that BNY Mellon ever priced an FX transaction inconsistently with those terms. Plaintiff instead asserts that a contract provision, stating that the bank's exchange rates in standing instruction transactions would be no less favorable than those used in the bank's "comparable arm's length" transactions, means that the bank was required to exchange currency in standing instruction transactions at the same rate it hypothesizes would have been afforded to clients who separately negotiated the rate in a transaction it does not allege actually occurred.

This argument is based on the faulty assumption that *negotiated* FX transactions are "comparable" to *standing instruction* FX transactions. The parties' contract, however, clearly distinguishes such transactions and makes clear that an entirely different pricing mechanism governs them. As Plaintiff admits, there are "two ways" of settling FX trades (standing instructions and negotiated transactions), that Plaintiff chose to use standing instructions, and that it did not "directly negotiat[e] the price of an FX transaction" with BNY Mellon. (Compl. ¶¶ 27-31.) With respect to transactions that are, in fact, comparable – other standing instruction currency exchanges on the same day in the same currency – the Complaint acknowledges they were all executed using identical exchange rates. As a result, Plaintiff fails adequately to allege that the bank breached the parties' express contract, or an implied covenant of good faith and fair dealing, or that the bank violated California's unfair competition law ("UCL") or false advertising law ("FAL") or the New York Unfair Business Practices Statute ("GBL § 349").

Rather than responding on the merits to the bank's arguments in support of its

motion to dismiss, Plaintiff attempts to portray those arguments as raising questions of fact that are not properly decided on the pleadings. But a plaintiff cannot hide behind the pleading standards where, as here, the infirmities in the plaintiff's claims are evident from the complaint and other documents properly before the Court. The Complaint should therefore be dismissed in its entirety and with prejudice.

## ARGUMENT

### I. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

Plaintiff's breach of contract claim should be dismissed because the Complaint fails to allege a breach of the actual terms of the parties' agreement. Plaintiff's argument that the meaning of the parties' contract is a question of fact that is not susceptible of determination on a motion to dismiss is wrong as a matter of law: courts routinely construe contracts at the pleading stage, and the parties' agreement in this case makes abundantly clear that the bank's alleged conduct was consistent with its contractual obligations. Additionally, Plaintiff's reliance on statements on the bank's website to impose obligations on the bank that are inconsistent with the parties' fully integrated contract is precluded by well-settled California law.

#### A. Plaintiff Fails to State a Claim With Respect to Rates Supposedly Offered to Other Clients in Comparable Transactions.

Based on the FX Procedures in effect before July 2008, Plaintiff alleges that the bank breached its contract by failing to afford Plaintiff the benefit of the exchange rates that supposedly are available in negotiated transactions. (Compl. ¶ 76; Pl.'s Br. at 15.)[1] This argument is flawed on at least two levels. To begin with, it assumes that negotiated foreign exchange transactions are "comparable" to standing instruction FX transactions. But that premise is inconsistent with the plain terms of the parties' contract, which, as the Plaintiff admits, provide for *two distinct* FX services with distinct pricing alternatives: (1) direct currency exchanges, in which the client or its investment manager directly negotiates the exchange rate (presumably for very large transactions) (Compl. ¶ 27), and (2) standing instruction FX transactions, in which the

---

[1] Plaintiff does not dispute that the FX Procedures were amended in July 2008 and no longer contained a comparable transactions provision thereafter. Thus, Plaintiff's breach of contract claim based on this provision pertains only to the transactions that occurred before July 2008.

bank posts foreign exchange rates every morning that it guarantees to honor or better (*id*. at ¶¶ 27-28, Def.'s Br. at 5).

In light of the two different services with two different pricing regimes, Plaintiff's proffered interpretation of the contract – that the parties agreed that a client could elect to negotiate or it could elect to accept the guaranteed rate, but that it would get the same price either way – is wholly implausible. Indeed, under Plaintiff's theory, since any customer would be entitled to the "best rate" on any standing instruction FX transaction, no customer would ever select the *negotiated rate* because the customer could end up with a worse rate than a standing instruction customer. That is an absurd conclusion that would render portions of the contract language surplusage and is thus belied by the plain language and intent of the contract. Plaintiff's interpretation is facially implausible, since it does not permit a reasonable inference that the bank is liable for the conduct alleged. *See, e.g.*, *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949 (2009).

As set forth in the bank's moving papers, the transactions that are comparable to Plaintiff's standing instruction FX transactions are other standing instruction FX transactions on the same day in the same currencies. With respect to those transactions, Plaintiff acknowledges that the bank used the same exchange rates (as required by the contract). (Compl. ¶ 54; Def.'s Br. at 7-8.) Plaintiff attempts to duck the issue by asserting that the question of which transactions are comparable to its own standing instruction FX transactions is a question of fact that may not properly be decided on a motion to dismiss. (Pl.'s Br. at 14-15.)[2] But where, as here, the meaning of a contract term (in this case "comparable" transactions) is clear on the face of the contract, there is no reason for a court not to construe the term in connection with a motion to dismiss. *See, e.g., Montrose Chem. Corp.* v. *Admiral Ins. Co.*, 10 Cal. 4th 645, 666-69 (1995); *Total Call Int'l, Inc.* v. *Peerless Ins. Co.*, 181 Cal. App. 4th 161, 173 (2010); *ACS Sys., Inc.* v. *St.*

---

[2] Plaintiff relies on *Sevey* v. *Soliz*, No. C 10-3677, 2011 WL 2633826, at *3 (N.D. Cal. July 5, 2011), for the proposition that under the "proper" motion to dismiss standard, "a party is not required to plead [its] evidence 'or specific factual details not ascertainable in advance of discovery.'" (Pl.'s Br. at 14-15.) However, the plaintiff in *Sevey* was a *pro se* prisoner alleging violations of the Eighth Amendment, and courts are "particularly liberal in construing allegations" in the plaintiff's favor under those circumstances. 2011 WL 2633826, at *1-2.

1  *Paul Fire & Marine Ins. Co.*, 147 Cal. App. 4th 137, 146-47 (2007).[3]

2  Moreover, Plaintiff's breach of contract claim should be dismissed for the
3  additional reason that Plaintiff has pleaded no facts showing that the bank provided a better
4  exchange rate to another counterparty than the rate provided to Plaintiff for a standing instruction
5  transaction on the same day involving the same currency pair. Its position is that it "expects" the
6  bank would have provided a better rate had it sought to negotiate, and argues that it lacks access to
7  facts showing whether better rates were actually offered to any other customer. (Pl.'s Br. at
8  14-15.) But without such facts, Plaintiff has no basis to assert that any other customer received a
9  more favorable price than it received on a comparable transaction. It is merely speculating that
10 maybe, on some unidentified occasion, if some other customer was trading a similar amount of the
11 same currency and chose to negotiate, it might have gotten a better price. Where a plaintiff lacks
12 facts sufficient to show a violation has occurred, the Federal Rules of Civil Procedure do not
13 simply give it a pass; they prohibit it from asserting a claim.

14 **B.  The Bank's Alleged Failure to Provide Best Execution Standards or Standing Instruction FX Transactions Free of**
15 **Charge Did Not Breach the Parties' Contract.**

16 In its opposition papers, Plaintiff appears to concede that statements on BNY
17 Mellon's website – that the bank used "best execution" standards in carrying out standing
18 instruction FX transactions and that standing instruction FX transactions were "free of charge" –
19 were not part of the contract between the parties (Pl.'s Br. at 16 & n.21), and thus cannot serve as
20 the predicate for a claim of breach of contract. Plaintiff falls back on an argument that the
21 meaning of this extra-contractual language is relevant to the interpretation of supposedly
22 ambiguous contract terms governing the pricing of standing instruction FX transactions. (*Id.*) To
23 begin with, as set forth above, the pricing terms in the parties' contract are not ambiguous and so

---

[3] Plaintiff's reliance on *Yakas* v. *Chase Manhattan Bank, U.S.A.*, No. C 09-02964, 2010 WL 367475 (N.D. Cal. Jan. 25, 2010) (Alsup, J.) is misplaced. (Pl.'s Br. at 14, 17.) In *Yakas*, this Court noted that the defendant raised "plausible" arguments to rebut three alleged contract breaches, but held that these arguments were insufficient to warrant dismissal at the pleading stage because, in part, the alleged breaches raised substantive factual issues requiring discovery about the interpretation of a contract term. 2010 WL 367475, at *4-6. Here, by contrast, the meaning of the term "comparable" is clear on the face of the contract and thus can be adjudicated on the pleadings.

1   there is no need to look to collateral documents to understand their meaning. *See supra* Part I (A).

2   Additionally, Plaintiff's position that the terms "best execution" standards and
3   "free of charge" specify how the bank's actual exchange rates must be set (Pl.'s Br. at 14-16) is
4   inconsistent with the contract. The parties' agreement provides only that the bank must post a
5   daily exchange rate that it must honor or better; the contract imposes no obligation at all on the
6   bank about how much better than the posted rate the actual exchange rate must be. Moreover, the
7   Global Custody Agreement ("GCA"), which is the contract governing the parties' custodial
8   relationship, explicitly states that BNY Mellon acts as a "*principal*" in FX transactions with
9   Plaintiff, which discloses that the bank was undertaking no obligation to exchange foreign
10  currency with Plaintiff without earning a spread on those transactions. The GCA also states that
11  the bank may "*retain any profits*" from FX transactions with Plaintiff. (Compl. Ex. A at 5.)
12  Accordingly, Plaintiff's argument – that the bank's website explains how much better the bank's
13  actual exchange rate must be compared to its daily posted rates – would impose obligations that
14  not only go *beyond* the requirements of the GCA but that are in fact *inconsistent* with its plain
15  terms. The law is clear that extrinsic documents may not be used in this manner to alter the terms
16  of an integrated contract. *See, e.g., Duncan* v. *McCaffrey,* No. F060922, 2011 WL 5110475, at *7
17  (Cal. App. 5 Dist. Oct. 28, 2011).[4]

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF AN IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

20  The implied covenant of good faith and fair dealing exists merely to prevent one
21  contracting party from "unfairly frustrating the other party's right to receive the *benefits of the*
22  *agreement actually made*." *Guz* v. *Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000) (emphasis in
23  original). Plaintiff alleges no facts that show it did not receive the benefits of the parties'

---

[4] In *Duncan,* the court reaffirmed that the parol evidence rule bars UCL claims based on attempts to "vary, alter, or add to the terms of a written agreement." 2011 WL 5110475, at *8-10. It found that rule inapplicable in that case because the defendant, having promised that a real estate development would be limited to custom homes, then exercised a power in its contract to turn it into a tract development. In contrast, the terms which Plaintiff would insert into its contract with BNY Mellon directly contravene the terms of that contract.

1  agreement, since Plaintiff never alleges that the bank failed to meet its contractual obligations to
2  post a daily exchange rate and to execute standing instruction foreign exchange transactions at a
3  rate at least as good as the posted rate and within 300 basis points of the interbank rate.  Rather,
4  Plaintiff seeks to use the implied covenant of good faith and fair dealing to impose on the bank
5  additional duties beyond those contained in the parties' contract.  Specifically, Plaintiff argues
6  that, in addition to the bank's contractual obligation to post exchange rates on a daily basis that the
7  bank would honor or better, the bank was required to set the exchange rates within two or three
8  basis points of the interbank rate.  (Compl. ¶¶ 39, 43, 46, 67; Pl.'s Br. at 18.)  But California law is
9  clear that the implied covenant cannot either "substantively alter" the terms of the parties'
10 contract, *Guz*, 24 Cal. 4th at 327, or contradict those terms, *Storek & Storek, Inc.* v. *Citicorp Real*
11 *Estate, Inc.*, 100 Cal. App. 4th 44, 55 (2002).

In its opposition papers, Plaintiff attempts to distinguish *Guz* and *Storek* by claiming that the agreement between the parties gave BNY Mellon unlimited discretion to impose FX rates on clients electing to engage in standing instruction currency exchanges, and that the bank exercised this discretion in bad faith.  (Pl.'s Br. at 18 & n.26).  This position mischaracterizes the parties' agreement:  the bank was obligated to exchange currency at rates that were at least as good as the daily posted rate and within 300 basis points of the interbank rate. (Def.'s Br. at 6-7.)  Because the bank's obligations with respect to pricing standing instruction FX transactions were expressly addressed in the parties' agreement, this case is on all fours with *Guz* and *Storek*, and Plaintiff thus cannot claim that the implied covenant required BNY Mellon to provide some hypothetically better exchange rates in its standing instruction FX transactions.[5]

### III.  PLAINTIFF FAILS TO STATE A CLAIM UNDER THE CALIFORNIA UCL

Plaintiff's claim under the UCL fails for the simple reason that Plaintiff has not adequately alleged facts showing that BNY Mellon's standing instruction FX services were fraudulent, unfair or unlawful.  Plaintiff relies in its opposition papers on the allegations in a

---

[5] Moreover, Plaintiff has not stated a claim for breach of the implied covenant of good faith and fair dealing because Plaintiff has not alleged that it was treated unfairly.  Nor can Plaintiff make such an allegation, since custodial clients always had the right to decline to proceed with a standing instruction transaction and to negotiate an exchange rate with the bank or another party.

complaint filed against *State Street Bank* by one of *that* bank's custodial clients arising out of State Street's FX services. However, Plaintiff cannot overcome the defects in this Complaint by relying on unproven allegations about another bank with different contracts and clients.[6]

### A. Plaintiff's Reliance on a Case Involving State Street Bank Cannot Salvage Its Claims Under the UCL.

In attempting to explain why its claim under the UCL should withstand a motion to dismiss, Plaintiff points to a district court decision involving standing instruction FX services provided by State Street Bank to its custodial clients. (Pl.'s Br. at 6-7 (citing *Hill* v. *State St. Corp.*, No. 09cv12146, 2011 WL 3420439 (D. Mass. Aug. 3, 2011)).) But the unproven allegations in a different case brought by a different plaintiff against a different custodial bank in connection with a different operative contract and a different standing instruction FX program are simply not relevant to the question whether Plaintiff here has adequately alleged that BNY Mellon's standing instruction program was fraudulent, unfair or unlawful.

Notably, the language of the State Street contract at issue in *Hill* appears to be quite different from the parties' agreement here.[7] For instance, the State Street contract stated that FX transactions were "priced based on the interbank rate at the time the trade is executed." The court held that it could not determine the meaning of "based on" – whether it means "at" or "marked up from" – given the record before the court at the pleading stage. *Hill*, 2011 WL 3420439, at *11. Here, by contrast, the parties' agreement provides that the bank will post a daily exchange rate, and that the actual rate will be at least as good as the posted rate and within 300 basis points of the interbank rate. In light of these differences, it is not surprising that Plaintiff does not rely upon

---

[6] Plaintiff argues that it has satisfied its burden for pleading ongoing misconduct and therefore is entitled to injunctive relief under the UCL. (Pl.'s Br. at 11 n.16.) Plaintiff cites only one case in support of this position – an unpublished decision by this Court applying the *federal* standard for an injunction. *Harvey G. Ottovich Revocable Living Trust Dated May 12, 2006* v. *Wash. Mut., Inc.*, No. C 10-02842, 2010 U.S. Dist. LEXIS 99161, at *13 (N.D. Cal. Sept. 22, 2010) (Alsup, J.). But the standard under California law – which is what governs here – is materially different, as it permits the court to dismiss the request for injunctive relief "in the absence of any evidence that the [allegedly wrongful] acts are likely to be repeated in the future." *Feitelberg* v. *Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1012 (2005). There is no such evidence here, and the request for injunctive relief should be dismissed.

[7] While the custodial agreement at issue in *Hill* was filed under seal and has not been submitted to this Court, the relevant terms of that agreement may be gleaned from the opinions in those cases.

1 *Hill* in connection with its breach of contract claim: Plaintiff presumably recognizes that, because
2 of these differences, *Hill* sheds no light on whether Plaintiff here has sufficiently alleged that the
3 bank violated the parties' contract. But the differences in the contract terms also mean that *Hill* is
4 not relevant to whether BNY Mellon's standing instruction program was fraudulent, unfair or
5 unlawful.

### B. Plaintiff Fails Adequately to Allege That Statements About the Bank's Standing Instruction FX Services Were Fraudulent.

In its opposition papers, Plaintiff argues that the bank's standing instruction FX services were fraudulent because the bank "traded at one rate but reported a different rate – higher with respect to purchases and lower with respect to sales – to their custodial clients." (Pl.'s Br. at 6.) This argument reflects a misunderstanding of how and when the bank acquired the currency it exchanged with clients – which was evident from the bank's disclosure that it executed standing instruction FX transactions as a principal. But even if Plaintiff were correct that the bank went to the interbank market to buy the currency needed to fill custodial clients' requests to exchange currency on particular days, Plaintiff fails to allege that the exchange rates reported to clients, which were the actual rates at which the bank exchanged currency with those clients, were in any way deceptive. The bank never represented that it would pass on rates it received to standing instruction customers; to the contrary, the GCA expressly states the bank would act as principal and could "retain any profits." (Compl. Ex. A at 5.)[8]

In this regard, it is notable that Plaintiff fails to address the well-settled rule that, in the context of a UCL claim, a party has no duty to disclose facts to a consumer in the absence of a contractual or other obligation to do so – even if the facts would be material. The rationale underlying this rule is simple: "[A] consumer is not 'likely to be deceived' by the omission of a fact that was not required to be disclosed in the first place." *Buller* v. *Sutter Health*, 160 Cal. App.

---

[8] *See Duncan*, 2011 WL 5110475, at *18 (fraud exception to parol evidence rule inapplicable in absence of allegation that defendant misrepresented the terms of the written contract).

4th 981, 987 (2008) (affirming dismissal of complaint).[9]  In the context of FX transactions, courts have already considered whether non-disclosure of the spread earned on the exchange violates the UCL, and have explicitly held that it does not absent an independent duty to make such disclosure. *McCann* v. *Lucky Money, Inc.*, 129 Cal. App. 4th 1382 (2005).  (*See also* Def.'s Br. at 16.)  Here, Plaintiff does not allege that BNY Mellon had any independent duty to disclose its earnings on FX transactions, which is fatal to Plaintiff's claim.

Plaintiff also argues that the term in the parties' contract providing that the bank would exchange currency in standing instruction FX transactions at rates "not less favorable" than those provided in "comparable arm's length transactions" was fraudulent because the bank supposedly would have been expected to provide better rates in negotiated FX transactions than in standing instruction trades.  (Pl.'s Br. at 6-7.)  Plaintiff then takes the position that the question whether this contract language was misleading raises factual issues that cannot be decided on a motion to dismiss.  (*Id.* at 7.)  But where, as here, a UCL claim is premised on an alleged misrepresentation, the court may, at the pleading stage, determine whether a reasonable consumer would have been deceived by the statement.  *Haskell* v. *Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) ("[I]f the alleged misrepresentation, in context, is such that no reasonable consumer could be misled, then the allegation may also be dismissed as a matter of law.") (dismissing UCL claims).[10]  And in view of the fact that the parties' contract sets out options for two *distinct* pricing mechanisms, no reasonable consumer – let alone a sophisticated entity such as Plaintiff with the daily advice of an outside investment manager – would have been misled into believing that it would receive the rates offered under one mechanism even though it signed up to receive rates under the other one.

---

[9] *See also Berryman* v. *Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1556-57 (2007) (affirming order sustaining demurrer because the complaint "does not allege any affirmative duty [by defendant] to disclose a breakdown of its fees to sellers"); *Daugherty* v. *Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 838 (2006) ("We cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is 'likely to deceive' anyone within the meaning of the UCL . . . In order to be deceived, members of the public must have had an expectation or an assumption about the matter in question." (internal quotation marks and citation omitted)).

[10] *See also Freeman* v. *Time*, 68 F.3d 285, 290 (9th Cir. 1995) (affirming dismissal of UCL claims).

**C.    Plaintiff Fails Adequately to Allege That BNY Mellon's Conduct Caused Unavoidable Injury.**

Plaintiff also fails adequately to plead a claim under the "unfair" prong of the UCL. The most glaring defect is Plaintiff's failure to allege either that it was injured or that any injury was unavoidable, as is required to state a claim under the unfair prong of the UCL. As to the existence of any injury, Plaintiff has not alleged that BNY Mellon actually offered a better rate to another customer in a transaction comparable to one that Plaintiff executed. In other words, Plaintiff does not plead facts showing that it failed to receive the benefit of its bargain, and if Plaintiff got the benefit of the bargain it struck, it was not injured.

As to the requirement that Plaintiff allege that its injury was one it could not "reasonably have avoided," Plaintiff argues that it had no meaningful ability to opt out of the standing instruction program because it had no reason to believe that "anything was amiss" with the bank's pricing for standing instruction currency exchanges "until the whistleblower actions were unsealed." (Pl.'s Br. at 11.) But each and every day Plaintiff's investment managers were, or should have been, deciding whether the rate offered under the standing instruction program was competitive. And the information readily available to Plaintiff – including a clear explanation of the negotiated and standing instruction pricing outlined in the GCA and the monthly FX reports that recorded "the date, amount, and price of an FX transaction" (Compl. ¶ 31) – was more than sufficient to determine whether there was anything "amiss" with the bank's pricing. Under these circumstances, Plaintiff's proffered explanation for why it supposedly could not have avoided its alleged injury is insufficient as a matter of law to salvage the claim under the unfair prong of the UCL. *See, e.g., Davis* v. *Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 598 (2009).[11]

---

[11] *See also Rabago* v. *Deutsche Bank Nat. Trust Co.*, No. 5:10-CV-01917, 2011 WL 2173811, at *5 (C.D. Cal. June 1, 2011) (dismissing claim under "unfair" prong of the UCL because "Plaintiff provides neither an explanation why he did not investigate nor why it would have been unreasonable for him to investigate"); *McKinniss* v. *Gen. Mills, Inc.*, No. CV 07-2521, 2007 WL 4762172, at *3 (C.D. Cal. Sept. 18, 2007) (dismissing UCL claims because, notwithstanding allegedly misleading statements on the front of food packages, the ingredients appeared elsewhere on the package, insuring that consumers were not deceived).

**D. Plaintiff Fails Adequately to Allege That BNY Mellon's Behavior Was "Unlawful."**

Plaintiff seeks to support a claim under the UCL by arguing in its opposition papers that the bank's conduct was unlawful (Pl.'s Br. at 8-9), even though the Complaint contains no such allegations. Plaintiff contends that its claims for violation of the FAL and GBL § 349, as well as its claims for breach of contract and breach of an implied covenant of good faith and fair dealing, constitute the required allegations of unlawful conduct. (Pl.'s Br. at 9.) To begin with, Plaintiff cannot piggyback a claim for violation of the UCL on these other claims, which are inadequately pleaded. Furthermore, the Complaint does not allege that the claims for violation of the FAL and GBL § 349 and Plaintiff's common law claims are the predicates for the claim under the unlawful prong of the UCL. That failure is fatal to Plaintiff's argument. *See, e.g.,* In re *Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010).

Furthermore, the only other statute that Plaintiff references in its Complaint is ERISA. (Def.'s Br. at 13 n.11.) But Plaintiff is careful not to allege that the bank violated ERISA. (*See, e.g.,* Compl. ¶¶ 7, 10, 23, 25, 36-37, 46.) Plaintiff's failure to allege any facts showing that BNY Mellon violated ERISA means that Plaintiff's UCL claim purportedly premised on a violation of ERISA must fail. *See, e.g., Rabago* v. *Deutsche Bank Nat. Trust Co.*, No. 5:10-CV-01917, 2011 WL 2173811, at *5 (C.D. Cal. June 1, 2011).

**IV. PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF THE FAL**

Plaintiff's claim under the FAL fails because Plaintiff has not alleged that BNY Mellon knew or was reckless in not knowing that its supposedly false statements were in fact untrue or misleading. (Def.'s Br. at 17.) Rather than addressing this argument on the merits, Plaintiff instead misstates the law by declaring that scienter is "not a necessary element" of a claim under the FAL. (Pl.'s Br. at 12). But the FAL prohibits "any statement . . . which is untrue or misleading, and *which is known, or which by the exercise of reasonable care should be known*,

to be untrue or misleading." Cal. Bus. & Prof. Code § 17500 (emphasis added).[12]  Here, because Plaintiff fails to allege that BNY Mellon either knew or should have known that the alleged misstatements at issue were either untrue or misleading, its FAL claim should be dismissed.

Plaintiff also returns to its refrain that the bank's arguments in support of its motion to dismiss may not be adjudicated at the pleading stage. (Pl.'s Br. at 13.)  But as with claims brought under the UCL, FAL claims are evaluated under the "reasonable consumer" standard. *Freeman* v. *Time*, 68 F.3d 285, 289 (9th Cir. 1995).  Courts routinely grant motions to dismiss claims under that standard where, as here, the alleged misstatements, when analyzed in context, are not likely to mislead or deceive a "reasonable" consumer. *See, e.g., id.* at 290; *Girard* v. *Toyota Motor Sales, U.S.A., Inc.*, 316 Fed. Appx. 561, 563, 2008 WL 5077581, at *1 (9th Cir. Nov. 24, 2008); *McKinniss* v. *Gen. Mills, Inc.*, No. CV 07-2521, 2007 WL 4762172, at *3-5 (C.D. Cal. Sept. 18, 2007); *Haskell*, 857 F. Supp. at 1399-1404.  For the same reasons that Plaintiff's UCL claim under the "fraud" prong fails – that no reasonable consumer, much less sophisticated entities like Plaintiff and its investment managers, would have been misled by the alleged misrepresentations – its FAL claim likewise should be dismissed. *See supra* Part III (B).

## V. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE NEW YORK UNFAIR BUSINESS PRACTICES STATUTE

Plaintiff fails to state a claim for violation of GBL § 349 because, among other reasons, Plaintiff has not alleged and cannot allege that the bank's standing instruction services are covered by the statute, which governs "consumer oriented" practices. *See, e.g., Ammirato* v. *Duraclean Int'l, Inc.*, 687 F. Supp. 2d 210, 221 (E.D.N.Y. 2010).  New York courts have defined "consumer" to mean those "who purchase . . . services for personal, family, or household use," *see PB Ams., Inc.* v. *Cont'l Cas. Co.*, 690 F. Supp. 2d 242, 252 (S.D.N.Y. 2010).  Plaintiff is not a consumer, and the bank's standing instruction services are not consumer oriented.

Plaintiff relies on a strained reading of *Oswego Laborers' Local 214 Pension Fund* v. *Marine Midland Bank, N.A.,* 85 N.Y.2d 20 (1995), to support its claim that the bank's standing

---

[12] *See also Churchill Village, L.L.C.* v. *Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1132 (N.D. Cal. 2000) ("[T]he FAA requires proof that defendant knew its advertising was false.").

instruction services fall within the ambit of GBL § 349. Contrary to Plaintiff's contention, however, *Oswego* is not "squarely on point." (Pl.'s Br. at 19). While the *Oswego* plaintiff, like IUOE, was a pension fund, the similarities between the two cases end there. The acts complained of by the *Oswego* plaintiff, unlike the conduct at issue here, were "consumer oriented" in the sense that they "potentially affect[ed] similarly situated consumers," and the bank in *Oswego* "dealt with plaintiffs' representative as any customer entering the bank to open a savings account." *Oswego,* 85 N.Y.2d at 27. Here, by contrast, Plaintiff fails to allege any facts suggesting that it was treated like an ordinary consumer: Plaintiff does not allege, for instance, that BNY Mellon offered standing instruction services to the general public for "personal, family, or household use," and indeed Plaintiff admits that standing instruction services are used only by highly sophisticated business entities. (Compl. ¶¶ 10, 17, 29.) Thus, Plaintiff fails to allege that the bank's standing instruction services have a "broader impact" on consumers generally. *Oswego,* 85 N.Y.2d at 26-27; *see also N.Y. Univ.* v. *Cont'l Cas. Ins. Co.*, 87 N.Y.2d 308, 321 (1995) (distinguishing *Oswego* and striking GBL §349 claim because defendants' sale of insurance policies and handling claims under it did not constitute "consumer-oriented conduct").[13]

## VI. PLAINTIFF LACKS STANDING TO BRING CLAIMS BASED ON ALLEGED CONDUCT BEFORE IT USED THE BANK'S STANDING INSTRUCTION SERVICES

In response to BNY Mellon's showing that Plaintiff lacks standing to bring claims based on conduct that occurred before Plaintiff ever used standing instruction services (Def.'s Br. at 18-19), Plaintiff argues that the question of standing is properly adjudicated in connection with a class certification motion rather than on a motion to dismiss (Pl.'s Br. at 21 n.29.) However, "[s]tanding is a jurisdictional element that must be satisfied prior to class certification." *Lee* v. *Oregon*, 107 F.3d 1382, 1390 (9th Cir. 1997) (internal quotation marks and citations omitted). Courts must therefore dismiss a claim if a plaintiff cannot satisfy the elements of Article III standing. *See, e.g., Akaosugi* v. *Benihana Nat'l Corp.*, No. C 11-01272, 2011 WL 5444265, at *1-

---

[13] Plaintiff's GBL § 349 claim also requires allegations that the bank engaged in materially misleading conduct. For the same reasons that Plaintiff's allegations fall short of what is required to state a claim under the fraud prong of the UCL, those allegations likewise fail adequately to plead that the bank's conduct was materially misleading under GBL § 349. *See supra* Part III (B).

3 (N.D. Cal. Nov. 9, 2011) (Alsup, J.). Here, Plaintiff's own allegations make clear that it lacks standing to sue in connection with foreign exchange transactions that occurred prior to June 2008. (Def.'s Br. at 19.)

## VII. PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE LIMITATIONS PERIODS

In its opposition papers, Plaintiff argues that the information it developed from its records is sufficient to support its claims (Pl.'s Br. at 21) *and* that it could not have identified its claims any sooner because the bank supposedly hid the alleged misconduct (*id.* at 22). Both cannot be true. If, as Plaintiff contends, its "own trading data" demonstrates "goug[ing]" (Compl. ¶ 68), Plaintiff or its investment managers could and should have noticed that something was amiss when they received the data reflecting the exchange rates – data provided by the bank shortly after the transactions were executed. The argument that, until a whistleblower tipped Plaintiff off, Plaintiff had no reason to review its documents to see if the bank was providing a competitive exchange rate in standing instruction transactions is, quite simply, a cop out. *See supra* Part III (C). Plaintiff cannot so easily abdicate its obligation to monitor its investments and investigate potential claims with reasonable diligence. (Def.'s Br. at 20.)

Plaintiff's invocation of the "continuing tort" doctrine to explain why its claims should not be barred by the relevant statutes of limitations (Pl.'s Br. at 24) is similarly unavailing. That doctrine applies only to unitary injuries that accumulate over time, such as workplace harassment or discrimination. *See, e.g., Nesovic* v. *United States*, 71 F.3d 776, 778 (9th Cir. 1995); *Richards* v. *CH2M Hill, Inc.*, 26 Cal. 4th 798, 824 (2001). It does not apply to a series of independent injuries – which is what Plaintiff here alleges. As to recurring discrete injuries, the statute of limitations for each begins to run when the injury is incurred (here, at the time the currency exchanges were executed).

## VIII. PLAINTIFF FAILS TO STATE CLAIMS AGAINST BANK OF NEW YORK MELLON CORP. AND BANK OF NEW YORK CO., INC.

Plaintiff does not allege that Defendants BNY Mellon Corp. and BNY Inc. provided any services whatsoever to it. Indeed, Plaintiff concedes that neither of these Defendants

1  provided it with any services.  (Pl.'s Br. at 24-25.)  Plaintiff argues instead that BNY Mellon
2  Corp. and BNY Inc. are properly named defendants because *subsidiaries* of these two entities did
3  work for IUOE.  (*Id.* at 25.)  But Plaintiff does not and cannot cite any case law to support its
4  theory of liability, which effectively would mean that any parent company is vicariously liable
5  under all circumstances for the actions of its subsidiaries.  Governing California law is precisely to
6  the contrary:  "a corporation is regarded as a legal entity, separate and distinct from its
7  stockholders, officers and directors, with separate and distinct liabilities and obligations."  *Sonora*
8  *Diamond Corp.* v. *Superior Court*, 83 Cal. App. 4th 523, 538 (2000).
9         Because BNY Mellon Corp. and BNY Inc. are not alleged to have provided
10  Plaintiff with any services, and in the absence of any legal support for the theory that a parent
11  company is always liable for the actions of its subsidiary, the only basis for naming these two
12  entities as defendants would be under a theory of corporate veil piercing.  Plaintiff contends that it
13  is not seeking to pierce the corporate veil or "otherwise disregard the corporate form," although it
14  also suggests that the question whether to do so is one of fact that should not be decided on a
15  motion to dismiss.  (Pl.'s Br. at 25.)  Regardless, Plaintiff has failed adequately to allege facts that
16  support piercing the corporate veil.  (Def.'s Br. at 20-21.)  The Court should therefore find as a
17  matter of law that Plaintiff has failed to state a claim against these two Defendants.  *See, e.g., Leek*
18  v. *Cooper*, 194 Cal. App. 4th 399, 415 (2011).

19                           **CONCLUSION**
20         For the foregoing reasons, the Complaint should be dismissed in its entirety and
21  with prejudice.

22  DATED:  November 22, 2011            Respectfully submitted,
23                                       Bingham McCutchen LLP
24
25                                       By:       /s/ David M. Balabanian
                                                     David M. Balabanian
26                                                 Attorneys for All Defendants
27
28