| | |
|---|---|
| Richard M. Heimann (State Bar No. ) | Michael P. Lehmann (State Bar No. 77152) |
| Lexi J. Hazam (State Bar No. 224457) | Christopher L. Lebsock (State Bar No. 184546) |
| Robert L. Lieff (State Bar No. 037568) (Of Counsel) | HAUSFELD LLP |
| LIEFF CABRASER, EIMANN & BERNSTEIN, LLP | 44 Montgomery Street, 34th Floor |
| | San Francisco, CA 94104 |
| 275 Battery Street, 29th Floor | Telephone: (415) 633-1908 |
| San Francisco, CA 94111-3339 | Facsimile: (415) 358-4980 |
| Telephone: (415) 956-1000 | |
| Facsimile: (415) 956-1008 | |

(Additional Counsel listed below)

*Attorneys for Plaintiff and the Class*

David M. Balabanian (State Bar No. 37368)
Frank Busch (State Bar No. 258288)
Tarek Sorensen (State Bar No. 261528)
BINGHAM MCCUTCHEN LLP
3 Embarcadero Center
San Francisco, CA 94111
Telephone: (415) 393-2000
Facsimile: (415) 393-2286

(Additional Counsel listed below)

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, STATIONARY ENGINEERS LOCAL 39 PENSION TRUST FUND, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE BANK OF NEW YORK MELLON CORPORATION, THE BANK OF NEW YORK MELLON, THE BANK OF NEW YORK COMPANY, INC., THE BANK OF NEW YORK, and THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION,<br><br>Defendants. | 3:11-cv-03620-WHA<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:     December 15, 2011<br>Time:    8:00 a.m.<br>Judge:   Hon. William H. Alsup |

In accordance with Civil Local Rule 16-9 and the Standing Order of this Court, the parties to the above-entitled action jointly submit this Case Management Statement.

## I.   JURISDICTION

This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a putative class action, including claims asserted on behalf of a nationwide class, filed under Rule 23 of the Federal Rules of Civil Procedure; there are hundreds, if not thousands, of proposed Class members; the aggregate amount in controversy exceeds the jurisdictional amount or $5,000,000.00; and at least two of the three Defendants are citizens of a State different from that of Plaintiff and the Class.  This Court also has subject matter jurisdiction over Plaintiff's and the proposed Class' claims pursuant to 28 U.S.C. § 1367(a).  Defendants have not contested personal jurisdiction in the matter.

## II.   FACTS

### A.   Plaintiff's Position

Plaintiff International Union of Operating Engineers, Stationary Engineers Local 39 Pension Trust Fund ("IUOE Local 39" or "Plaintiff") filed this action to recover damages on behalf of itself and similarly-situated retirement funds for harm suffered as a result of Defendants' practice of assigning fictitious foreign currency exchange ("FX") rates to the Class' purchases and sales of foreign securities that were done pursuant to "standing instructions," in violation of California and New York law as well as Defendants' contractual duties to Plaintiff and the Class.  Plaintiff and similarly-situated retirement funds entrusted Defendants as "custodians" to conduct FX trades on their behalf in accordance with Defendants' written representations and the legislatively declared policies underlying the Employee Retirement Income Security Act of 1974 ("ERISA").  Defendants breached that trust by misrepresenting the rates they charged or credited to their clients, allowing Defendants to unlawfully reap hundreds of millions of dollars at the direct expense of Plaintiff and other Class members, from whom Defendants actively concealed their malfeasance.  In short, Defendants conducted FX trades for ERISA plans using one rate, then reported and charged the plans a different rate, pocketing the difference.

**B.     Defendants' Position**

Plaintiff's breach of contract claim is based on invented obligations that are inconsistent with the plain language of the fully integrated written contract between it and Defendants concerning standing instruction foreign exchange services. That agreement requires Defendants to offer a guaranteed foreign exchange rate each morning and, if Plaintiff (through its investment manager) elects to proceed with a foreign exchange trade with Defendants, to execute the trade at a price that is no worse than the guaranteed rate and within 300 basis points of the interbank rate. Plaintiff does not allege that Defendants ever priced a foreign exchange transaction inconsistently with those terms. Plaintiff instead asserts that a contract provision stating that the Defendants' rates assigned to standing instruction transactions would be no less favorable than those assigned to Defendants' "comparable arm's length" transactions required Defendants to exchange currency in standing instruction transactions at the same rate Plaintiff hypothesizes would have been afforded to clients who separately negotiated the rate in a hypothetical transaction that Plaintiff does not allege actually occurred. Plaintiff's statutory claims are likewise defective. Plaintiff fails to allege that the exchange rates reported to custodial clients, which were the actual rates at which Defendants exchanged currency with those clients, were in any way deceptive, or that the standing instruction program was otherwise unfair. Defendants never represented that they would pass on rates they received to standing instruction customers; to the contrary, the parties' contract expressly stated the Defendants would act as principal and could "retain any profits." And Plaintiff could freely choose to negotiate foreign exchange transactions directly, either with Defendants or other foreign exchange service providers.

**III.    LEGAL ISSUES**

   **A.     Plaintiff's Position**

The following disputed legal issues are common to Plaintiff and the Class:

   a.    whether The Bank of New York Mellon Trust Company, National Association (the "Bank") and other Defendants owed contractual duties to the Bank's California-based ERISA-covered custodial clients;

- 2 -      JOINT CASE MANAGEMENT STATEMENT
                                                        3:11-CV-03620-WHA

   b. whether these Defendants violated the contractual obligations owed to their California-based ERISA-covered custodial clients by charging FX rates that did not reflect market rates at the time the clients' "standing instructions" FX trades were executed;

   c. whether these Defendants violated the contractual obligations owed to their California-based ERISA-covered custodial clients by retaining, without proper disclosure, the margin between the actual (or market) FX rate when executing a "standing instructions" FX transaction for a custodial client and the rate actually charged the client;

   d. whether Defendants, or any of them, violated Cal. Bus. & Prof. Code § 17200, *et seq.*, Cal. Bus. & Prof. Code § 17500, *et seq.*, and/or New York's General Business Law § 349 by charging, and retaining the margin from, FX rates that did not reflect market rates at the time the clients' "standing instructions" FX trades were executed, without disclosure of same;

   e. whether Plaintiff and the Class suffered monetary damages as a result of the Defendants' deceptive, unlawful and unfair actions and, if so, the proper measure of those damages; and

   f. whether the Class is entitled to injunctive relief.

**B.** **Defendants' Position**

The following key legal issues are genuinely in dispute:

1. Whether Defendants violated any contractual obligations to Plaintiff as a result of the rates at which they executed standing instruction foreign exchange transactions. Defendants submit that the answer is no.

2. Whether Defendants' standing instruction foreign exchange transactions were in any way misleading or unfair to Plaintiff, as Plaintiff alleges in its statutory claims, even though Defendants accurately reported the rates at which they exchanged currency with Plaintiff and even though Plaintiff had the option to decline to execute standing instruction transactions and instead to negotiate with Defendants or other foreign exchange service providers. Defendants submit that the answer is no.

3. Whether it is possible to determine the price at which Defendants acquired currency that they subsequently exchanged with Plaintiff? Defendant submits that the answer is no.

4. Whether Plaintiff has stated any claim against the two holding company Defendants, Bank of New York Mellon Corp. and Bank of New York Co., Inc. Defendants maintain that the answer is no.

5. Whether significant portions of Plaintiff's claims are barred by the applicable statutes of limitation. Defendants maintain that the answer is yes.

### C. The Parties' Joint Position

The parties agree that other legal issues may arise and failure to list any legal issue in dispute is not an admission or concession by any party that such legal issue does not currently exist or may not exist. The parties also reserve the right to identify additional legal issues as discovery progresses.

## IV. MOTIONS

Defendants have moved to dismiss the Class Action Complaint, and briefing is complete. The matter is set for oral argument on December 15, 2011. At the appropriate time, Plaintiff will move for class certification pursuant to Fed. R. Civ. P. 23.

## V. AMENDMENT OF PLEADINGS

The parties reserve the right to amend their pleadings to add additional claims or parties if and when appropriate and subject to Court approval as necessary.

## VI. EVIDENCE PRESERVATION

### A. Plaintiff

Plaintiff understands its duty to preserve records, including paper and electronic copies, and has taken steps to preserve all documents potentially relevant to this action in its possession.

### B. Defendants

Defendants understand their duty to preserve records, including paper and electronic copies, and have taken reasonable steps to preserve potentially relevant documents in their possession, custody and control.

## VII. DISCLOSURES

Pursuant to Federal Rule of Civil Procedure 26(a), the parties have agreed to serve their respective initial disclosures, by mail, on or before December 21, 2011.

## VIII. DISCOVERY

### A. Subjects:

#### 1. Plaintiff's Position

Plaintiff anticipates that the scope of discovery generally will focus on (i) Defendants' policies, procedures or practices with respect to purchasing or selling foreign currency on behalf of ERISA clients (both from within and outside California) under standing instructions; (ii) the negotiation and completion of contracts (and any amendments) between California-based ERISA-fund clients and Defendants during the proposed Class Period (defined below) relating to foreign currency exchange transactions and standing instructions; and (iii) transaction data relating to the timing and pricing of standing instruction and direct foreign exchange trades during the Class Period.

Plaintiff does not believe bifurcation of discovery into "class" and "merits" phases is necessary, practical, or appropriate here. Because the issues relevant to class certification and class liability overlap, Plaintiff believes that any attempt to bifurcate discovery will result in greater inefficiency and may generate endless disputes about line-drawing in this case. In addition, as courts have recognized, there is no requirement that "class" discovery be bifurcated from merits or individual discovery. *See Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 41 (N.D. Cal. 1990) ("[a]n order restricting discovery to class issues would be impracticable because of the closely linked issues, and inefficient because it would be certain to require ongoing supervision of discovery"). Indeed, as the *Manual for Complex Litigation -- Fourth* recognizes, "information about the nature of the claims on the merits and the proof they require is important to deciding certification. Arbitrary insistence on the merits/class discovery distinction sometimes thwarts the informed judicial assessment that current class certification practice emphasizes." *See* Federal Judicial Center, *Manual for Complex Litigation – Fourth*, § 21.14 (2005).

**2.    Defendants' Position**

Defendants recognize that merits discovery and class discovery overlap to a certain extent, but they maintain Defendants maintain that the primary focus of discovery initially should be on matters principally relating to class certification, including (i) differences in contract terms among the putative class members; (ii) differences in representations made to the putative class members and their investment managers; (iii) the availability of alternative options for exchanging foreign currency and the terms provided by other foreign exchange service providers; (iv) differences in approaches to the use of standing instructions for foreign currency exchange among putative class members and their investment managers; and (v) Plaintiff's trading data.  Such an approach will avoid the potentially unnecessary expenditure of completing all fact discovery before Plaintiff moves for class certification.

**B.    Electronic Discovery:**

**1.    Plaintiff's Position**

Plaintiff intends to seek disclosure or discovery of electronically stored information in its native format where possible.

**2.    Defendants' Position**

Defendants intend to produce disclosure or discovery of electronically stored information at multipage tiffs with associated metadata, except that excel spreadsheets will be produced in native format.

**C.    Issues Relating to Confidentiality and Privilege:**

Consistent with Federal Rule of Civil Procedure 26(c), the parties are currently attempting to negotiate a stipulated protective order governing the exchange of any confidential, proprietary information, any information protected by consumers' rights or privacy, and any other information appropriately included in such a protective order.  To that end, Plaintiff's counsel has circulated to Defendants' counsel a draft order patterned after the model Stipulated Protective Order that is available on the Northern District of California's website.  The parties will also attempt to agree on a procedure for asserting claims of privilege after production, and agree to cooperate if privileged or work product protected material is produced inadvertently.  The parties

do not presently foresee any other special issues relating to privilege or protection of work product material.

**D.  Limitations:**

The parties agree that no limitations should be placed on discovery other than those imposed by the Federal Rules of Civil Procedure.

**IX.  CLASS ACTIONS**

**A.  Plaintiff's View**

Pursuant to Civil L.R. 16-9(b), any party seeking to maintain a case as a class action must include in the case management statement the following additional information.

1. Plaintiff contends that this action is maintainable as a class action under Rule 23(b)(2) and/or (b)(3).

2. Plaintiff brings this action on behalf of (1) with respect to Claims for Relief One through Four in the Class Action Complaint, a Class consisting of and defined as all California-based employee benefit plans covered by ERISA for which Defendants or any of their predecessors, successors or affiliates provided custodial FX services, including executing FX transactions pursuant to "standing instructions," (the "California Class") from January 12, 1999 to the present (the "Class Period") and, (2) with respect to Claim for Relief Five, a Class consisting of and defined as all employee benefit plans covered by ERISA, wherever situated, whose FX transactions, including those executed pursuant to "standing instructions," were executed in New York by the Defendants' New York FX desk (the "New York Class") during the Class Period.

3. The members of the Class are so numerous that joinder of all members is impractical, if not impossible. Plaintiff is informed and believes that the Class consists of hundreds, if not thousands, of ERISA funds. The Class is composed of an easily ascertainable, self-identifying set of entities for whom Defendants performed custodial FX services.

4. The claims of the representative Plaintiff are typical of the claims of the Class, in that the representative Plaintiff, like all members of the Class, utilized Defendants for custodial FX services, including FX transactions done pursuant to "standing instructions." The factual

1   bases of Defendants' misconduct are common to all Class members and represent a common

2   thread of misconduct resulting in injury to all members of the Class.

3       5.    Plaintiff is an adequate representative of the Class because Plaintiff's claims are

4   typical of those of the Class, and Plaintiff has the same interests in the litigation of this case as the

5   other Class members.  Plaintiff is committed to vigorous prosecution of this case, and has retained

6   competent counsel, experienced in litigating large, complex class actions of this nature, including

7   class actions involving consumer deception and financial fraud.  Plaintiff anticipates no

8   management difficulties in this litigation.

9       6.    A class may be certified under Federal Rule of Civil Procedure 23(b)(3).  Each

10  member of the Class has been damaged and is entitled to recovery as a result of the fictitious FX

11  rates they were charged or credited on FX trades executed pursuant to "standing instructions."

12      7.    As indicated in Section III above, there are questions of law and fact common to

13  the Class that predominate over any questions affecting only individual members of the Class.

14      8.    A class action is superior to other means of deciding this controversy.  Should

15  separate actions be brought or be required to be brought by each individual member of the Class,

16  the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and

17  the litigants.  The prosecution of separate actions would also create a risk of inconsistent rulings,

18  which might be dispositive of the interests of other Class members not parties to the adjudications

19  and/or might substantially impede their ability to adequately protect their interests.

20      **B.**    **Defendants' View**

21      Plaintiff has filed this action as a purported class action.  Defendant believes that none of

22  Plaintiff's claims are suitable for class certification, and that the proposed class cannot be

23  properly certified under Fed. R. Civ. P. 23 and the United States Constitution.  Most

24  fundamentally, questions of law and fact common to the proposed class do not predominate over

25  individual issues:

26      1.    Plaintiff asserts claims for breach of contract, but Defendants' custodial contracts

27  were individually negotiated by Defendants or the legacy companies, and as a result, the contracts

28  of the putative class members will have significant differences.

2. Plaintiff contends that Defendants were obligated to offer them exchange rates that were at least as good as the rates in "comparable" transactions. Defendants maintain that the parties' contract makes clear that a transaction comparable to a particular standing instruction foreign exchange transaction is another standing instruction foreign exchange transaction on the same day for the same currency pair, and Plaintiff concedes that those rates were identical. But to the extent that the Court were to accept Plaintiff's proffered interpretation that the comparable transactions are negotiated transactions – and it should not – those transactions would still require a trade-by-trade analysis for each putative class member to determine whether there is liability and if so whether there are any damages.

3. Plaintiff contends that Defendants violated several statutes barring unfair business practices and unfair competition based on alleged misstatements and omissions about the standing instruction program. This claim will necessarily involve a determination whether each putative class member was misled, which will require individualized evidence about, among other matters, what statements were made to each member of the putative class and to each putative class member's investment managers; what materials concerning standing instructions were reviewed by each putative class member and its investment managers; what other information each putative class member and its investment managers had about the standing instruction program; and what each putative class member's pattern of standing instruction use reflects about its understanding of the program.

Additionally, Plaintiff has not shown that its use of the standing instruction foreign exchange service provided by Defendants was typical of the use of that service, or that its investment manager was typical in its approach to use of that service. And Plaintiff lacks standing to assert claims brought prior to the time it first executed standing instruction foreign transactions.

## X. RELATED CASES

A *qui tam* lawsuit brought on behalf of a number of county and municipal retirement funds not covered by ERISA (and thus not part of the proposed Class in this case) but making similar allegations relating to Defendants' standing instruction foreign exchange transactions was

recently removed from state court to the Northern District of California, and Defendants intend to designate the *qui tam* lawsuit as related to this case. The parties are not aware of any other related cases or proceedings pending before another judge of this court.

## XI. RELIEF

### A. Plaintiff's View

Plaintiff, on behalf of itself and the Class, seeks (A) judgment decreeing Defendants' acts to be (i) unfair and deceptive business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, (ii) untrue and misleading advertising in violation of Cal. Bus. & Prof. Code § 17500, *et seq.*, and (iii) unfair, unconscionable and/or deceptive trade practices in violation of the New York Deceptive Trade Practices Act, N.Y. Gen. Bus. L. § 349, *et seq.*; (B) that the Court grant such preliminary and permanent equitable relief, including imposition of a constructive trust, as is appropriate to preserve the assets wrongfully taken from Plaintiff and the Class; (C) that the Court award compensatory, consequential, and general damages in an amount to be determined at trial; (D) that the Court order disgorgement and restitution of all earnings, profits, compensation and benefits received by Defendants as a result of their unlawful acts, omissions, and practices; (E) that the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees; and (F) that the Court award pre- and post-judgment interest and all such other relief as the Court deems just and proper.

### B. Defendants' View

Defendants believe that Plaintiff's claims have no basis in fact or law and that therefore no relief is warranted.

## XII. SETTLEMENT AND ADR

The parties are willing to consider the possibility of private mediation at some later point in this litigation, though, at minimum, not until after conducting an appropriate amount of discovery.

## XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The parties do not consent to having a Magistrate Judge conduct all further proceedings.

### XIV. OTHER REFERENCES

The parties agree that this case is not suitable for binding arbitration or a special master. Defendants take the position that this case is suitable for reference to the Judicial Panel on Multidistrict Litigation.

### XV. NARROWING OF LEGAL ISSUES

The parties are presently unaware of any issues that can be narrowed by agreement or by motion, and do not currently have any suggestions to expedite the presentation of evidence at trial.

### XVI. EXPEDITED SCHEDULE

Given the class allegations in the complaint, the parties do not believe that this is the type of case that can be handled on an expedited basis with streamlined procedures.

### XVII. SCHEDULING

Discovery will commence immediately after the entry of a Stipulated Protective Order. The Parties agree in principle that all fact discovery should be complete within one year of the initial Case Management Conference, provided that mutually acceptable deadlines for document production can be agreed to. The Parties have had several conferences to date concerning discovery issues, and will (with the Court's approval) continue to meet and confer and provide the Court with a proposed litigation schedule (including proposed dates for the motion for class certification, designation of experts, hearing of dispositive motions, pretrial conference and trial) within 30 days after the initial Case Management Conference.

### XVIII. TRIAL

Plaintiff has demanded a jury trial. The parties respectfully submit that it is premature to estimate the length of trial until Plaintiff's anticipated motion for class certification is decided.

### XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Plaintiff has filed the "Certification of Interested Entities or Persons" as required by Civil Local Rule 3-16. Plaintiff discloses as interested persons in this matter the following: itself, as well as the members of the proposed Class.

Defendants hereby confirms that, other than the named parties, it is aware of no interest to

be reported under Civ. L.R. 3-16..

## XX. OTHER MATTERS

None.

Dated: _December 8, 2011   Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: /s/ Richard M. Heimann
      Richard M. Heimann

Richard M. Heimann (State Bar No. 063607)
*rheimann@lchb.com*
Lexi J. Hazam (State Bar No. 224457)
*lhazam@lchb.com*
Robert L. Lieff (State Bar No. 037568) (Of Counsel)
*rlieff@lchb.com*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

Steven E. Fineman (State Bar No. 140335)
*sfineman@lchb.com*
Daniel P. Chiplock
*dchiplock@lchb.com*
Michael J. Miarmi
*mmiarmi@lchb.com*
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

| | |
|---|---|
| 1 | Michael P. Lehmann (State Bar No. 77152) |
| | *mlehmann@hausfeldllp.com* |
| 2 | Christopher L. Lebsock (State Bar No. 184546) |
| | *clebsock@hausfeldllp.com* |
| 3 | HAUSFELD LLP |
| | 44 Montgomery Street, 34th Floor |
| 4 | San Francisco, CA 94104 |
| | Telephone: (415) 633-1908 |
| 5 | Facsimile: (415) 358-4980 |
| 6 | Michael D. Hausfeld |
| | *mhausfeld@hausfeldllp.com* |
| 7 | William P. Butterfield |
| | *wbutterfield@hausfeldllp.com* |
| 8 | Ralph J. Bunche |
| | *rbunche@hausfeldllp.com* |
| 9 | HAUSFELD LLP |
| | 1700 K Street, NW Suite 650 |
| 10 | Washington, D.C. 20006 |
| | Telephone: (202) 540-7200 |
| 11 | Facsimile: (202) 540-7201 |
| 12 | Michael P. Thornton |
| | *mthornton@tenlaw.com* |
| 13 | Michael A. Lesser |
| | *mlesser@tenlaw.com* |
| 14 | THORNTON & NAUMES LLP |
| | 100 Summer Street, 30th Floor |
| 15 | Boston, MA 02110 |
| | Telephone: (617) 720-1333 |
| 16 | Facsimile: (617) 720-2445 |
| 17 | Gregory S. Hach |
| | *ghach@hrssclaw.com* |
| 18 | Michael A. Rose |
| | *mrose@hrssclaw.com* |
| 19 | Frank R. Schirripa |
| | *fschirripa@hrssclaw.com* |
| 20 | HACH ROSE SCHIRRIPA & CHEVERIE LLP |
| | 185 Madison Avenue, 14th Floor |
| 21 | New York, NY 10016 |
| | Telephone: (212) 213-8311 |
| 22 | Facsimile: (212) 779-0028 |
| 23 | *Attorneys for Plaintiff and the Class* |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

| | | |
|---|---|---|
| 1 | Dated: _December 8, 2011 | BINGHAM MCCUTCHEN LLP |
| 2 | | By: */s/ David M. Balabanian* |
| 3 | | David M. Balabanian (State Bar No. 37368) |
| 4 | | David M. Balabanian (State Bar No. 37368) |
| | | Frank Busch (State Bar No. 258288) |
| 5 | | Tarek Sorensen (State Bar No. 261528) |
| | | BINGHAM MCCUTCHEN LLP |
| 6 | | 3 Embarcadero Center |
| | | San Francisco, CA  94111 |
| 7 | | Telephone:  (415) 393-2000 |
| | | Facsimile:   (415) 393-2286 |
| 8 | | *Attorneys for Defendants* |

I, Richard M. Heimann, attest that concurrence in e-filing this Joint Case Management Conference Statement and Rule 26(f) Report has been obtained from signatory David M. Balabanian.

Dated:  December 8, 2011                Respectfully submitted,

By: */s/ Richard M. Heimann*
Richard M. Heimann

- 14 -

JOINT CASE MANAGEMENT STATEMENT
3:11-CV-03620-WHA